MEMORANDUM DECISION IN MANDAMUS OBJECTIONS TO THE MAGISTRATE'S DECISION
Relator, Patricia A. Clark, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its May 13, 1998 order denying relator's application for permanent total disability ("PTD") compensation and to enter an order declaring her permanently and totally disabled.
This matter was referred to a court-appointed magistrate, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and has recommended that this court deny relator's request for a writ of mandamus. Relator filed objections to the magistrate's decision.
In her first objection, relator argues that the magistrate erred in finding that she does not have two separate psychological conditions as a result of her two separate allowed claims. Dysthymic disorder was allowed in both claim No. 74-5456, for an injury sustained on March 13, 1974, and in claim No. OD192184, for an injury sustained on April 24, 1987. It is clear that the commission did not list dysthymic disorder as being allowed in claim No. 74-5456. It is also clear that in his report Dr. Greer did not list dysthymic disorder as being allowed in claim No. 74-5456.
The magistrate found that relator suffered one psychological condition and that "[t]o infer that Dr. Greer divided up the percentage of impairment due to this one psychological condition between the two claims such that relator is actually entitled to a higher award than the twenty-five percent permanent emotional impairment which he assigned to her, is not supported by the record." However, considering the plain language of Dr. Greer's report, we cannot determine whether Dr. Greer divided up the percentage of impairment and assessed a percentage of emotional impairment based upon only one injury. As indicated above, Dr. Greer did not list dysthymic disorder as an allowed injury under claim No. 74-5456. Further, Dr. Greer twice states in his report that "[relator's] degree of Permanent Emotional Impairment due to her industrial accident on 4/24/87
* * * is presently estimated at Class III/25%." (Emphasis added.) Dr. Greer also states in his report that "[t]he degree of emotional impairment from her industrial accident on 4/24/87 would currently not be expected to solely prevent her from returning to her former position of employment." (Emphasis added.) From the face of the medical report, we simply cannot determine whether Dr. Greer limited his opinion to only the dysthymic disorder associated with the injury on April 24, 1987, or whether his opinion included relator's total permanent disability due to dysthymic disorder.
Respondents, Industrial Commission and Ranco, Inc., citeState ex rel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276, for the proposition that the commission's failure to include a recognized psychological condition among the allowed conditions identified on the face of its order does not constitute an abuse of discretion. However, there is one major distinction between the facts in Zollner and the facts in the present case. InZollner, the Supreme Court found that despite the commission's failure to recognize an allowed psychological condition on the face of its order, the commission based its order on the reports of a doctor who evaluated the claimant's allowed psychiatric condition. However, in the present case, there is absolutely nothing to suggest that Dr. Greer evaluated relator's dysthymic disorder as it related to her March 13, 1974 injury.
Although dysthymic disorder may be a condition that is incapable of being separated between two injuries, as the magistrate found, we find that it would be most prudent to return this matter for clarification as to (1) whether Dr. Greer took into consideration relator's dysthymic disorder caused by her March 13, 1974 injury in assigning a total emotional disability percentage, and (2) whether the commission took into consideration relator's dysthymic disorder caused by her March 13, 1974 injury in denying PTD.
Relator claims in her second objection that the magistrate erred in finding that "[i]t is conceivable that, within relator's limitations, she could perform certain sedentary jobs as well as certain light duty jobs." Relator argues that because neither Dr. Rutherford nor the commission expressly stated the exertional level of work relator was capable of performing, the magistrate erred in failing to conclude that the commission's order constituted an abuse of discretion.
While it is true that neither Dr. Rutherford nor the commission specified whether relator was capable of "sedentary" or "light" work, relator fails to cite any case that places the requirement on an examining physician to express his opinion as to exertional level by using the specific words "sedentary" or "light" or that a worker's capabilities may fall into only one of these levels. Indeed, Dr. Rutherford's opinion is very clear as to the level of exertion relator is capable of in that he expresses whole-body impairment percentages and specific physical capabilities and limitations. Dr. Rutherford stated that relator has no impairments as to walking, standing, sitting, or driving; that relator could frequently climb stairs, use foot controls, crouch, stoop, bend, kneel, and reach from wallet level; and that relator could occasionally seize, hold, grasp, and turn items and reach to knee and floor level. Further, the commission relied on the vocational report of Jeffrey Berman, who specifically stated that Dr. Rutherford's report concludes that relator was capable of performing sedentary and light-range employment with some restrictions. Dr. Rutherford's report provided sufficient information to allow Mr. Berman to comprehend relator's functional limitations so that he could list the precise jobs currently available to relator considering these limitations. Thus, from Dr. Rutherford's and Mr. Berman's reports, it is clear that the commission was well aware of relator's exertional level and did not err in relying on the report of Dr. Rutherford.
Relator states in her third objection that the commission's discussion of the nonmedical factors and how these factors affected her ability to engage in sustained remunerative employment was inadequate. The magistrate found that the commission need not engage in its own analysis and explanation where the vocational report is quite detailed, and the commission may rely upon the vocational report in explaining how the nonmedical factors impact on the industrial injury to permit the claimant to return to sustained remunerative employment. The magistrate also noted that this court has previously found that the commission may accept the findings contained within the vocational report in reaching its decision, citing State ex rel.Hunt v. Indus. Comm. (Sept. 28, 1995), Franklin App. No. 94AP-1659, unreported (Memorandum Decision); State ex rel. Freemanv. Indus. Comm. (Mar. 17, 1998), Franklin App. No. 97AP-251, unreported (Memorandum Decision).
The commission did briefly discuss the nonmedical factors, including the age of relator, the educational level of relator, and her prior work history. The commission also thoroughly explained the findings of Mr. Berman, who completed the employability assessment. It is obvious that in specifically reiterating certain findings of Dr. Berman, the commission found such findings persuasive and was adopting those findings as its own. Further, the commission then found that while the age of relator was a barrier to some employment, it was not a barrier to all employment. The commission concluded that given the reports of Dr. Greer, Dr. Rutherford, and Mr. Berman, relator's age alone would be an insufficient basis on which to grant PTD. We find that when taken as a whole, the commission's discussion of the nonmedical factors was sufficient.
After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of relator's objections, we sustain relator's first objection and overrule her second and third objections. Accordingly, we issue a writ of mandamus returning the matter to the Industrial Commission of Ohio to (1) vacate its order denying PTD compensation; (2) engage in further consideration of the evidence pursuant to this decision; and (3) issue a new order granting or denying PTD consistent with this decision.
Objection one sustained; objections two and three overruled;writ of mandamus issued.
BOWMAN and KENNEDY, JJ., concur.